*E-FILED - 7/22/08*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN FORREST ZUMBRO, ) | No. C 06-6010 RMW (PR) |
| ) | |
| Petitioner, ) | ORDER DENYING PETITION |
| ) | FOR WRIT OF HABEAS |
| vs. ) | CORPUS |
| ) | |
| A.P. KANE, Warden, et al., ) | |
| ) | |
| Respondents. ) | |

Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the California Board of Prison Terms ("Board") decision denying him parole. The court ordered respondent to show cause why the petition should not be granted. Respondent has filed an answer addressing the merits of the petition, and petitioner has filed a traverse. Having reviewed the briefs and the underlying record, the court concludes that petitioner is not entitled to relief based on the claims presented and denies the petition.

///

///

///

///

# BACKGROUND[1]

Following his 1983 conviction for second degree murder, grand theft firearm and grand theft auto, petitioner was sentenced to a term of eighteen years and four months-to-life in state prison. On October 7, 1982, at the age of twenty, petitioner consumed large quantities of alcohol with a friend at a bar. At some point in the night, petitioner retrieved a gun from his motorcycle which was parked outside. He had taken the gun from his employer earlier that day. Petitioner attempted to sell the gun to his friend but the friend declined to purchase it. Sometime after, petitioner got into an argument with the victim, Greg Matthews. As the argument escalated, the bartender suggested the two continue outside. Outside the bar, petitioner stated he took the gun out to show Matthews under the pretext of offering the gun for sale. Then, petitioner fired a single round into Matthews' chest. Petitioner remembers Matthews running back into the bar before petitioner left the scene. Petitioner stole a car the next day and was arrested the day after that.

After a parole suitability hearing on May 27, 2004, the Board denied petitioner parole. Thereafter, petitioner filed a petition for a writ of habeas corpus in the Los Angeles County Superior Court, which was denied on August 2, 2005. Petitioner filed a habeas petition in the California Court of Appeal, which was summarily denied on September 8, 2005. Petitioner then filed a habeas petition in the California Supreme Court which was summarily denied on September 13, 2006. Petitioner filed the instant federal habeas petition on September 27, 2006.

# DISCUSSION

**A. Standard of Review**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28

---

[1] The facts surrounding petitioner's commitment offense are drawn from Parole Consideration Hearing Transcript, May 27, 2004. Resp. Ex. 3.

U.S.C. § 2254(a). Under the AEDPA, a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry), 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if the state court correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

Where, as here, the highest state court to consider the petitioner's claims issued a summary opinion which does not explain the rationale of its decision, federal review under § 2254(d) is of the last state court opinion to reach the merits. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this case, the last state court opinion to address the merits of petitioner's claim is the order of the Los Angeles County Superior Court. Resp. Ex. 11 (In re John F. Zumbro, Los Angeles County Superior Court Order re: Writ of Habeas Corpus, Case No. BH003400 (A085733), (Aug. 2, 2005)).

**B. Subject Matter Jurisdiction**

Respondent contends that this court does not have subject matter jurisdiction over the instant petition because California inmates have no federally-protected liberty interest in parole under California Penal Code section 3041. Resp. Mem. P. & A. at 2. Without this protected liberty interested, respondent argues, petitioner has not alleged a federal

1  question and this Court does to have subject matter jurisdiction to decide his claims.  Id.

2  Although a convicted person has no inherent or constitutional right to early release
3  on parole, a state's statutory parole scheme may create "a presumption that parole release
4  will be granted" if it uses mandatory language.  Greenholtz v. Inmates of Nebraska Penal
5  & Corr. Complex, 442 U.S. 1, 12 (1979).  The Ninth Circuit made clear that because
6  California's parole statute uses mandatory language, "California inmates continue to have
7  a liberty interest in parole after In re Dannenberg, 34 Cal.4th 1061, 23 Cal.Rptr.3d 417,
8  104 P.3d 783 (2005)."  Sass v. Cal. Bd of Prison Terms, 461 F.3d 1123, 1125 (9th Cir.
9  2006) (finding that the district court misread Dannenberg which did not hold that there is
10  no constitutionally protected liberty interest in parole – but upholding denial of petition
11  on other grounds).  Because controlling Ninth Circuit authority holds that petitioner does
12  have a constitutionally protected liberty interest in release on parole, this court has subject
13  matter jurisdiction pursuant to 28 U.S.C. § 2254 to decide whether petitioner's Fourteenth
14  Amendment right to due process was violated by the Board's denial of parole.

**C. Petitioner's Due Process Claims**

16  Petitioner asserts that his right to due process was violated by the Board's decision
17  denying him parole because there is no evidence to support its finding that he is
18  unsuitable for parole.  Petitioner maintains that the Board's denial of parole was based on
19  factors either incorrectly or arbitrarily decided and thus violated his right to due process.

20  1.  The "Some Evidence" Standard

21  California prisoners have a constitutionally protected liberty interest in release on
22  parole and, therefore, they cannot be denied a parole date without the procedural
23  protections necessary to satisfy due process.  McQuillion v. Duncan, 306 F.3d 895, 902
24  (9th Cir. 2002).  A parole board's decision must be supported by "some evidence" to
25  satisfy the requirements of due process.  Sass, 461 F.3d at 1128-29 (adopting some
26  evidence standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S.
27  445, 454-55 (1985) (hereinafter "Hill")).  Accordingly, if the Board's denial of parole in
28  this case is to satisfy due process, there must be some evidence, with some indicia of

reliability, to support the decision. Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005). Whether the "some evidence" standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [Board]." Hill, 472 U.S. at 455-56.

In assessing whether or not there is "some evidence" supporting the Board's denial of parole, this court considers the regulations which guide the Board in making its parole suitability determinations. California Code of Regulations, title 15, section 2402(a) states that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." The regulations direct the Board to consider "all relevant, reliable information available." Cal. Code of Regs., tit. 15, § 2402(b). Further, they list sets of circumstances tending to indicate whether or not an inmate is suitable for parole. Cal. Code of Regs., tit. 15, § 2402(c)-(d).[2]

"While subdivision (a) of section 3041 states that indeterminate life (i.e., life-maximum) sentences should 'normally' receive 'uniform' parole dates for similar crimes, subdivision(b) provides that this policy applies 'unless [the Board] determines' that a release date cannot presently be set because the particular offender's crime and/or criminal history raises 'public safety' concerns requiring further indefinite incarceration."

---

[2] The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. Cal.Code of Regs., tit. 15, § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Cal.Code of Regs., tit. 15, § 2402(d).

Dannenberg, 34 Cal.4th at 1070 (emphasis omitted).  In sum, "the Board, exercising its traditional broad discretion, may protect public safety in each discrete case by considering the dangerous implications of a life-maximum prisoner's crime individually." Id. at 1071. The California Supreme Court's determination of state law is binding in this federal habeas action. Hicks v. Feiock, 485 U.S. 624, 629-30 (1988).

  2. The Board's Decision Was Based on "Some Evidence"

Here, the Board articulated several factors that led to its conclusion that petitioner was "not yet suitable for parole and would pose an unreasonable risk of danger to society or threat to public safety if released from prison." Resp. Ex. 3 at 70.  First, the Board considered petitioner's commitment offense and found that the murder was carried out in "an exceptionally violent and callous manner" which "demonstrates a disregard for human life." Id.  The Board also found that petitioner's "motive for this crime [was] inexplicable and trivial" and that petitioner was on probation at the time of the commitment offense. Id. at 71-72.  Second, the Board found that the "petitioner has failed to profit from society's previous attempts to correct his criminality." Id. at 72.  The Board noted that the petitioner had a criminal history as a juvenile and as an adult.  Based on prior offenses of burglary, fighting, shooting at an occupied dwelling and resisting a police officer, the Board found that petitioner had a prior record of violence.  Lastly, the Board termed petitioner's parole plans "unrealistic" as he had no job offer and no relatives in the county of commitment and therefore no source of residence or immediate support. Id. at 72-73.

The Board did recognize petitioner's participation in self-help – including his involvement in Alcoholics Anonymous, Narcotics Anonymous, Alternatives to Violence, and others. Id. at 73.  The Board commended petitioner for his achievement in vocational training and also noted his lack of disciplinary problems while in prison. See id. (noting that petitioner only had "three 115" disciplinary write-ups over twenty-one years in some of the more violent prisons: San Quentin and Folsom State Prisons).  Nevertheless, the Board found petitioner to be "unpredictable and a threat to others." Id.

In its order denying habeas relief, the superior court determined that the Board did not abuse its discretion and that the factors relied upon by the Board were reasonable. Resp. Ex. 11 at 2. The court found that all three of the findings by the Board justifying denial were supported by "some evidence." Id. at 2. Petitioner told the Board that he "does not know why – how [the gun] was fired" and that he "didn't remember making a decision to shoot him or anything like that. . . ." Id. Relying on these statements, the court found that "there is 'some evidence' the motive for the victim's murder is 'inexplicable.'" Id. Second, the court found petitioner's prior involvement in a neighborhood fight and his 1981 conviction for shooting at an occupied dwelling was "some evidence" of a prior record of violence. Id. Lastly, the court found petitioner's lack of residential parole plans in the state of California indicative of "some evidence" that his parole plans were insufficient. Id. The California Court of Appeals and California Supreme Court summarily denied petitioner's habeas petition.

### a. Petitioner's Commitment Offense and Prior Record

As described above, the Board's decision relied to a large extent on two unchanging, pre-incarceration factors: petitioner's commitment offense and petitioner's prior criminal history. Petitioner correctly asserts that Ninth Circuit case law has cautioned that the seriousness of the commitment offense fades over time as a predictor of suitability. See Biggs v. Terhune, 334 F.3d 910, 917 (9th Cir. 2003) ("A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation.")

The Ninth Circuit's opinion in Irons v. Carey, 505 F.3d 846 (9th Cir. 2007), further addressed whether reliance on an immutable factor such as the commitment offense violates due process. Although the court affirmed the Board's denial of parole for Irons, it stated that "indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes." Id. at 854

1  (citation and footnote omitted).  In two earlier cases, Biggs and Sass, the court had also
2  affirmed the Board's denial of parole, but made contradictory observations on the effect of
3  continued denial of parole based solely on unchanging factors such as the inmate's
4  commitment offense and/or prior criminal history.  Compare Biggs, 334 F.3d at 917
5  ("continued reliance in the future on an unchanging factor, the circumstance of the
6  offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals
7  espoused by the prison system and could result in a due process violation") with Sass, 461
8  F.3d at 1129 ("it is not our function to speculate about how future parole hearings could
9  proceed").  Irons limited the holdings of Biggs and Sass to inmates deemed unsuitable
10 prior to the expiration of their minimum sentences and held the door open for inmates,
11 such as petitioner in the instant case, deemed unsuitable after the expiration of their
12 minimum sentences: "All we held in [Biggs and Sass,] and all we hold today, . . . is that,
13 given the particular circumstances of the offenses in these cases, due process was not
14 violated when these prisoners were deemed unsuitable for parole prior to the expiration of
15 their minimum terms."  Irons, 505 F.3d at 854-55.  In the instant case, petitioner was
16 convicted in 1983 and found unsuitable by the Board in 2004, two and a half years after
17 the expiration of the minimum term of his sentence of eighteen years and four months to
18 life.

19     At some point after an inmate has served his minimum sentence, the probative
20 value of his commitment offense as an indicator of "unreasonable risk of danger to
21 society" recedes below the "some evidence" required by due process to support a denial
22 of parole.  See Irons, 505 F.3d at 854.  A decision to revoke parole based on an inmate's
23 commitment offense that can no longer be considered probative of dangerousness to
24 society would be arbitrary and not comport with the "some evidence" standard.  See Hill,
25 472 U.S. at 545-55, 457.  This court must consider whether, given the severity of his
26 commitment offense and his priors, enough time has past beyond petitioner's minimum
27 sentence term that "indefinite detention based solely on an inmate's commitment offense
28 [and prior record], regardless of the extent of his rehabilitation," violates due process,

1  given petitioner's liberty interest in parole. See Irons, 505 F.3d at 854. Petitioner argues
2  that he has spent more years in prison for this crime than he had spent as a free man prior
3  to his incarceration. He reasons that his offense, though a grave and gross injustice to
4  society, was more than twenty-one years behind him when parole was denied and, as
5  such, his commitment offense should no longer be used as "some evidence" to support a
6  denial of parole.

7  Even though petitioner had been incarcerated beyond his minimum term, the
8  evidence before the Board indicated that petitioner continued to pose an unreasonable risk
9  of danger to society. Petitioner shot the victim in the chest at close range and twenty-one
10 years later can still offer no explanation for his behavior. See Resp. Ex. 3 at 4. Also,
11 petitioner had begun building a criminal record at a young age. After being arrested for
12 breaking into a boxcar at age thirteen, he was on juvenile probation for the remainder of
13 his minority. Id. at 9. He was arrested twice more as a juvenile for fighting and
14 joyriding. Id. at 10. As an adult he had one uncharged arrest for burglary, and three
15 convictions. All of petitioner's prior convictions involved the same alcohol abuse and/or
16 use of firearms that characterized his commitment offense. Additionally, two of these
17 convictions were violent in nature – petitioner shot at his brother's house after an initial
18 drunken argument about a girlfriend and subsequent argument about rent, and petitioner
19 assaulted a police officer with a deadly weapon after he was stopped for a traffic violation
20 and was intoxicated. Id. at 10-13. Petitioner third conviction - a burglary of a department
21 store for guns - further evidences that his behavior the night he shot and killed Matthews
22 was not aberrational. Rather, this pattern of behavior indicates that the commitment
23 offense was the most serious manifestation of petitioner's long-time abuse of alcohol and
24 fascination with guns.

25 Additionally, petitioner had not fully accepted responsibility for the offense.
26 Although he acknowledged that he "took someone's life" and now he "feel[s] terrible
27 about what he did," petitioner continued to retell the events of the commitment offense as
28 if he was a bystander in an accidental series of events that swept by him. See id. at 8.

1  Petitioner stated again and again that he does not remember making any decision to shoot
2  Matthews, but that it "just happened." Id. at 4-6, 56. He even stated that if he had
3  "intentionally wanted to shoot him and kill [Matthews], then there was the opportunity to
4  shoot him more than one time" and to escape in a more efficient way than stealing a car.
5  Id. at 65. Petitioner's statement that his behavior was a result of "sheer stupidity" and
6  that he was "acting a fool" and "out of control" hardly captures the full gravity of a
7  murder in which he shot the victim in the chest from a very close range. Id. at 8-9. Such
8  evidence amounts to "some evidence" in support of the Board's determination that
9  petitioner continued to present a risk of danger if released to the public, and consequently
10 that petitioner was not suitable for parole. See Rosas, 428 F.3d at 1232.

11        The Ninth Circuit has noted that "over time" the Board's "continued reliance in the
12 future on an unchanging factor, the circumstance of the offense and conduct prior to
13 imprisonment" would "raise serious questions involving his liberty interest in parole."
14 Biggs, 334 F.3d at 916. The court has set no bright line rule as to the length of time
15 necessary for a commitment offense to become unuseable for a parole suitability
16 determination, however. Id. at 917 (finding, in general terms, that reliance on the
17 commitment offense in the "future. . . could result in a due process violation") (emphasis
18 added). Here, the challenged parole denial took place when petitioner had served
19 approximately twenty-one years in prison, which is not long after his sentence's minimum
20 term of eighteen years and four months. Given the circumstances of his commitment
21 offense, as well as the serious and violent offenses in petitioner's criminal history, the
22 Board's reliance on these factors in denying parole did not violate due process.

23        b. Other Factors
24            I. Psychological Evaluations & Behavior in Prison

25        Petitioner's psychological evaluations, though favorable, do not undermine the
26 Board's finding that petitioner remains a danger to society. The most recent psychologist
27 evaluation, from 1998, found that petitioner presented a no more than average violence
28 potential if released to the community, but such potential increased dramatically if

1  petitioner became involved in alcohol again.  Resp. Ex. 3 at 26.  In a prior evaluation,
2  from 1997, that psychologist also noted that petitioner's "most significant risk factor. . .
3  as a precursor to violence would be continued abuse of alcohol" but that the psychologist
4  saw "nothing to suggest that this man would continue to abuse alcohol in the future."  Id.
5  In fact, petitioner had attended the substance abuse program, Alcoholic's Anonymous, for
6  at least twelve years.  Id. at 19, 40-41.  He demonstrated a comprehensive understanding
7  of the twelve-step program and how it will serve to structure his life in the future.  Id. at
8  41, 47.  Further, petitioner participated in the Alternatives to Violence Project which
9  "provides people with effective ways of dealing with conflicts and chemical dependencies
10 by developing successful personal interactions and conflict resolution skills."  Id. at 31.

11         However, both these evaluations and petitioner's participation in the violence and
12 substance abuse prevention program preceded his most recent disciplinary write-up, in
13 2000, for mutual combat with another prisoner and verbally assaulting a correctional
14 officer.  Id. at 42.  Both petitioner's self-help record and his psychological evaluations
15 indicate that he should have the necessary skills to cope with conflict tensions and
16 chemical dependencies – two factors in his commitment offense.  However, his more
17 recently engaging in a fight in prison substantially undermines confidence that he had
18 mastered such skills, and indicates that he may have indeed been a danger to society if
19 released.  Therefore, the Board correctly concluded that a more accurate and
20 comprehensive assessment of petitioner's violence potential would include a new
21 psychological evaluation addressing his more recent disciplinary write-up.  Id. at 74.

                                    ii.  Parole Plans

23         The last factor relied upon by the Board in finding petitioner unsuitable for parole
24 was petitioner's plans for the future after his release.  The Board termed petitioner's
25 parole plans "unrealistic at this point" stating that he had no relatives in California,
26 therefore no source of residence, and no secure employment.  Resp. Ex. 3 at 72-73.  The
27 Los Angeles Superior Court, affirming the Board's denial on habeas review, agreed and
28 noted petitioner's lack of residential parole plans was "some evidence" of insufficient

1 parole plans. Resp. Ex. 11 at 2.

2      The regulations setting forth the standard guiding the Board's parole suitability
3 determination authorize the Board to consider "all relevant, reliable information
4 available." Cal.Code of Regs., tit. 15, § 2402(b). However, these regulations address the
5 issue of future parole plans specifically. If a "prisoner has made realistic plans for release
6 **or** has developed marketable skills that can be put to use upon release," then such plans
7 may constitute a "circumstance tending to show suitability" for parole. Cal.Code of
8 Regs., tit. 15, § 2402(d)(8) (emphasis added).

9      The regulations make clear that petitioner's suitability for parole can be
10 determined by petitioner's development of marketable skills. Cal.Code of Regs., tit. 15, §
11 2402(d)(8). The Board acknowledged that petitioner had developed the marketable skill
12 of that of an Auto Mechanic for which he as been vocationally certified. Resp. Ex. 3 at
13 73. Petitioner also had "laudatory" achievements in the Fabric and Textile Industry. Id.
14 The Board concluded that although petitioner "currently has no job offer in writing. . . it
15 does not seem out of the question that he could find a job offer." Resp. Ex. 3 at 73.
16 Petitioner has obtained marketable skills during his incarceration. He has twelve years
17 experience in the Textile Garment Factor and another four years in the Furniture Factory.
18 Resp. Ex. 10 (Pet. For Writ of Habeas Corpus in LA Superior Ct.) at 3. He completed his
19 certification requirements and graduated with a 90 Percentile Ranking. Id. Also, he was
20 retained as a supervisor in the Automotive Mechanics shop where he assisted in the
21 training of his peers. Id. Petitioner has demonstrated a willingness to work and an
22 aptitude for several different trades, and he has developed marketable skills that will help
23 him find and retain employment once paroled.

24      Additionally, there was evidence that petitioner had received written support from
25 his out-of-state relatives. Resp. Ex. 10 at Ex. C. Though the letter was without
26 specificity, it expressed a sincere desire to offer petitioner "full support" and contained
27 encouraging words about petitioner prognosis. Id. Further, considering his lack of in-
28 state relatives, petitioner contacted several half-way houses in an attempt to establish a

Order Denying Petition for Writ of Habeas Corpus
G:\PRO-SE\SJ.Rmw\HC.06\Zumbro010paroleden.wpd  12

residence. Resp. Ex. 3 at 46. Although he had not yet received a response, petitioner did receive an invitation to be interviewed upon release as in-take interviews could not be performed at the prison. Id. Contrary to the Board's finding, petitioner's actions suggest he made a realistic assessment about his source of residence once paroled. The unfortunate circumstance of having no in-state relatives should not be found detrimental to petitioner's suitability determination if petitioner has made realistically comparable plans to establish residence in California.

Although the Board's focus on the location of petitioner's relatives was misplaced, it's underlying premises – that petitioner needed concrete parole plans – was appropriately considered as part of its parole suitability determination. Petitioner had developed marketable skills during his incarceration and had made credible attempts to secure residence after parole. Therefore, it is reasonable to conclude that petitioner has shown "Understanding and Plans for the Future" which is one circumstance tending to show suitability for parole. Cal.Code of Regs., tit. 15, § 2402(d)(8). However, the regulations permit the Board to consider "all relevant, reliable information available" including, but not limited to, the enumerated circumstances tending to show suitability for parole. Cal. Code of Regs., tit. 15, § 2402(b). The Board conclusion represented a more general finding that petitioner presented more of a threat to society if released without solid plans for his future. Given the erratic, self-destructive conduct that led to petitioner's commitment, it is reasonable to expect that petitioner would benefit from having structure in post-prison life. The Board's finding that petitioner had not secured employment nor had he found any certain residence for his parole was relevant to whether petitioner would re-offend and therefore "some evidence" supporting the Board's denial of parole. See Rosas, 428 F.3d at 1232.

3. Conclusion

Based upon the record in this case, the state courts' determination that there was some reliable evidence to support the Board's decision, and that petitioner's right to due process was not violated, was not contrary to or an unreasonable application of federal

1 law. See, e.g., Rosas, 428 F.3d at 1232-33 (upholding denial of parole based on gravity
2 of offense and psychiatric reports); Biggs, 334 F.3d at 916 (upholding denial of parole
3 based solely on gravity of offense and conduct prior to imprisonment); Morales, 16 F.3d
4 at 1005 (upholding denial of parole based on criminal history, cruel nature of offense, and
5 need for further psychiatric treatment).  Accordingly, habeas relief is not warranted in this
6 case.

## CONCLUSION

The court concludes that petitioner has failed to show any violation of his federal constitutional rights in the underlying state court proceedings and parole hearing. Accordingly, the petition for writ of habeas corpus is DENIED.  The clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: ___7/21/08_____

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

Order Denying Petition for Writ of Habeas Corpus
G:\PRO-SE\SJ.Rmw\HC.06\Zumbro010paroleden.wpd   14